IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE BLANTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | )   Civil Action No. 20-1534 |
| | ) |
| STATE FARM FIRE AND CASUALTY CO., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

In this action commenced by Plaintiff Diane Blanton ("Blanton"), she asserts claims of breach of contract and bad faith against Defendant State Farm Fire and Casualty Co. ("State Farm"). Ms. Blanton's claims arise from State Farm's handling of her insurance claim as a result of water damage.

State Farm has now moved to dismiss the Complaint. For the reasons that follow, its motion will be granted without prejudice for Plaintiff to file an Amended Complaint.

**I.    Procedural History**

Ms. Blanton originally commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania. In Count I of the Complaint, she alleges that State Farm breached its contractual duties. Count II asserts a claim that State Farm acted in bad faith in violation of 42 Pa. C.S. § 8371.

State Farm subsequently removed the case to this Court based upon diversity of citizenship jurisdiction. (ECF No. 1.) On October 19, 2020, State Farm filed a motion to dismiss (ECF No. 6), which has been fully briefed. (ECF Nos. 7, 12, 14.)

## II. Factual Background

According to the Complaint, State Farm issued a policy of insurance to Ms. Blanton that provides certain coverage for property she owned at 609 Dorseyville Road, Pittsburgh, Pennsylvania (the "Policy"). She alleges that on or about August 27, 2019, while the Policy was in full force and effect, there was a sudden and accidental direct physical loss to the property as a result of water damage. She provided State Farm with timely notice of the loss. Ms. Blanton also notified State Farm that the private adjuster she hired concluded that the loss was caused by the water damage. According to Ms. Blanton, this is a peril that is insured under the Policy, but State Farm refused to fully compensate her for the loss without justification. (Compl. ¶¶ 1-7 & Ex. A.)[1] Although she spent in excess of $150,000.00 to make repairs to the property, State Farm estimated the covered damage amounted to a replacement cost value of $2,548.98. (*Id.* ¶¶ 12-16.) This is less than the deductible under the Policy. See Compl. Ex. A (Renewal Declarations at 2); Ex. E at 6.

Thus, Ms. Blanton claims that State Farm breached the Policy by failing to fully compensate her for her loss.

Ms. Blanton also alleges that State Farm engaged in bad faith during the adjustment of her claim. According to the Complaint, this took several forms. First, Ms. Blanton asserts, State Farm's adjuster concluded that much of the damage resulted from water escaping from a crack in a downspout and running behind the soffit, fascia and stucco on the front of the house. Therefore, the damage to Ms. Blanton's property occurred due to "wear, tear and deterioration over a period of time," an exclusion under the Policy. (*Id.* ¶ 21 & Ex. B.) By relying on the wear and tear exclusion, however, State Farm's adjuster failed to consider the "catch-all" provision that State

---

[1] Notice for Removal (ECF No. 1) Ex. 2.

Farm would "pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section." (*Id.* ¶ 22.) According to Ms. Blanton, water escaping from a crack in a downspout is a resulting loss that is not excluded by the Policy. (*Id.* ¶ 23.)

Ms. Blanton also claims that State Farm engaged in bad faith after it subsequently engaged an engineer to inspect the property. Although it concluded that the split in the downspout was caused by freezing, which is covered under the insurance policy, State Farm maintained that the resulting damage was not covered due to "continuous exposure to water from the tail piece." In its letter denying coverage, State Farm omitted that part of the exclusion that states that the seepage or leakage of water must come from identified sources, none of which include a downspout. Its letter also omitted the ensuing loss provision related to the wear and tear exclusion that was included in the initial denial letter. (*Id.* ¶¶ 24-28 & Exs. B, C.)

Ms. Blanton also alleges that while State Farm took the position that the deterioration, rot, and mold on the property was the result of and not the cause of the water damage, the Policy only excludes circumstances when deterioration, rot, and mold is the cause of the loss. Despite Ms. Blanton's emails that pointed out State Farm's improper denials, it refused to provide full coverage. (*Id.* ¶¶ 29-32 & Exs. D, E.)

### III. Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that

he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679.  As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Therefore, the Court can consider the Complaint and all of the documents attached thereto, including the insurance policy and the correspondence between State Farm and Plaintiff and her adjuster.[2] *See Bailey v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 2248228, at *3 (W.D. Pa. May 13, 2015) (referring to insurance policy attached to complaint and granting motion to dismiss).

---

[2] Plaintiff also attached these documents to her brief in opposition to the motion to dismiss (ECF No. 12).

IV. **Discussion**

A. <u>Breach of Contract Claim</u>

Under Pennsylvania law, the insured has the burden of proving facts that bring its claim within the policy's coverage. *Koppers Co., Inc. v. Aetna Cas. & Surety Co.*, 98 F.3d 1440, 1447 (3d Cir. 1996). "By contrast, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." *Id.* (citations omitted).

The Pennsylvania Supreme Court has held that "the interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the court.'" *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (quoting *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)).[3] When the language is unambiguous, a court must give effect to its language; if a provision is ambiguous, however, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." *Id.* (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).

The Policy includes the following relevant provisions:

> We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or otherwise excluded or limited in this policy.
> …

> **SECTION I – LOSSES NOT INSURED**

> 1. We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils

---

[3] Plaintiff argues that, by contending that this case presents an issue of policy interpretation, State Farm is conceding that she has stated a claim (ECF No. 12 at 3, 5). This is incorrect, however, because policy interpretation is a matter to be determined by the court, and if the language is unambiguous, the court must give effect to it.

>> listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damages, arises from natural or external forces, or occurs as a result of any combination of these:
>>
>>> …
>>
>>> f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:
>>
>>>> (1) and is:
>>
>>>>> (a) continuous;
>>>>> (b) repeating;
>>>>> (c) gradual;
>>>>> (d) intermittent;
>>>>> (e) slow; or
>>>>> (f) trickling; and
>>
>>>> (2) from a:
>>
>>>>> (a) heating; air conditioning, or automatic fire protective sprinkler system;
>>>>> (b) household appliance; or
>>>>> (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.
>>
>>> …
>>
>>> g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;
>>
>>> …
>>
>>> i. wet or dry rot;
>>
>>> …
>>
>> However, we will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section. [the "Resulting Loss Provision."]
>
> (Compl. Ex. A at 12, 14-16.)[4]
>
> State Farm states that it concluded that the damage to the downspout that split because of

---

[4] Some of State Farm's communications also referred to an exclusion relating to fungus (that is, mold), but, as it notes in its reply brief, Plaintiff's adjuster indicated that she was not claiming any damage from fungus. (Compl. Ex. D at 2.)

freezing is covered by the Policy, but that the damage to Plaintiff's soffit is not because it "consisted of or was caused by … wear, tear … deterioration … [or] wet or dry rot." It argues that because the original loss was covered, the Resulting Loss Provision does not apply and that, even if it did apply, the resulting losses (wear and tear, deterioration, wet or dry rot) are themselves are excluded by provisions 1(g) and 1(i). It asserts that it did not rely on the "seepage or leakage of water" exclusion in 1(f), which does not apply because the water did not emanate from one of the listed sources (e.g., heating, air conditioning, plumbing).

Ms. Blanton contends that the exclusions upon which State Farm relies are ambiguous. However, as State Farm notes, in arguing that the Resulting Loss Provision provide coverage, she ignores the second half of that provision. The complete clause provides "… we will pay for any resulting loss from items a. through l. *unless the resulting loss is itself a Loss Not Insured as described in this Section.*" [emphasis supplied.] As the Policy clearly and unambiguously provides, "deterioration, rot, wear, tear, and cracking" are "Losses Not Insured." Thus, there is no coverage for this type of damage in what Plaintiff deems the "catch-all" ensuing loss provision.

In the Complaint, Ms. Blanton alleges that her loss was caused by water damage and that it was "sudden and accidental." (Compl. ¶¶ 4, 11.) She further alleges that the water came from a downspout and that "water escaping from a crack in a downspout is a resulting loss that is not excluded or uninsured under the policy." (*Id.* ¶¶ 23, 27.) In the communication from her adjuster to State Farm, he acknowledges that the cause of the loss is that the "tail piece froze and split." (Compl. Ex. D at 1.) Her adjuster also states that since the cause of the loss is covered, the "resulting damages," including water traveling into the soffit area, are also covered. (*Id.*)

Thus, as pleaded, Ms. Blanton's breach of contract claim fails to state a claim upon which relief may be granted. To be clear, the Court concludes that "deterioration, rot, wear, tear, and

cracking" are Losses Not Insured as defined in the Policy, and that Ms. Blanton's interpretation of the Policy is unavailing. Simply put, there is no coverage for these types of damages.

As noted above, however, a curative amendment must be allowed unless it would be inequitable or futile. Ms. Blanton states in her Brief in Opposition that she "has never conceded that the damage to the property should be classified as 'deterioration, rot, wear, tear, cracking or which is the result of mold.,'" (ECF No. 12 at 5.) Notably, the Complaint does not define the "resulting damages" other than to vaguely describe it as water damage. Therefore, the Court cannot conclude as a matter of law that amendment would be futile in the event that Ms. Blanton claims that her property sustained "resulting damages" that are not excluded by the terms of the Policy. Therefore, with respect to Count I, the motion to dismiss will be granted with leave to amend in the event that Ms. Blanton can specifically define any "resulting damages" that are not excluded by the terms of the Policy.

### B. Bad Faith Claim

Pennsylvania's bad faith statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. A bad faith claim is distinct from the underlying contractual insurance claims from which the dispute arose. *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa. Super. 1997), *appeal denied*, 717 A.2d 1028 (Pa. 1998). Nevertheless: "Resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the

denial of coverage, because under the circumstances the insurer necessarily has a reasonable basis for denying benefits." *Gold v. State Farm Fire and Cas. Co.*, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012) (citing *Frog, Switch, & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999)). "However, if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." *Id.* at 598 (citing *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 435 (3d Cir. 2007)).

In order to recover under a bad faith claim under Pennsylvania statutory law, a plaintiff must show: (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). As the Court of Appeals for the Third Circuit has summarized:

> Bad faith "must be proven by clear and convincing evidence and not merely insinuated." *Terletsky [v. Prudential Property & Casualty Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1997)]* (collecting cases). As the District Court noted, this heightened standard requires the insured to provide evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Grp.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (citations omitted). In deciding a motion for summary judgment, a court "must view the evidence presented in light of the [insured's] substantive burden at trial." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citations omitted).

*Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011). Mere negligence or bad judgment is not bad faith. *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 380 (Pa. Super. 2002).

For the reasons explained above, Ms. Blanton has failed to state a claim that State Farm improperly denied her request for coverage under the policy. The bad faith claim does not refer to any circumstances other than her contention that State Farm failed to communicate all of the policy language to her in one of its letters. As noted above, however, State Farm was not relying on exclusion 1(f) and therefore its omission from a letter she received cannot be deemed evidence

of bad faith. Plaintiff also claims that the February 24, 2020 letter "omitted the ensuing loss provision for the wear and tear exclusion that was included in the initial denial letter." (Compl. ¶ 28.) As State Farm notes, however, this is simply incorrect, as shown by Plaintiff's Exhibit C. Exclusion 1(g) related to wear and tear was included in the February 24, 2020 letter. (*Id.* Ex. C at 2.)

Finally, State Farm argues that, even if an omission occurred, Plaintiff at most states a claim for negligence given the fact that the basis for the coverage decision was clearly set forth in the multiple communications attached to Plaintiff's Complaint. Negligence, mistake, or even poor judgment are insufficient to support a claim for bad faith. *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Therefore, with respect to Count II, the motion to dismiss will be granted.

For these reasons, State Farm's Motion to Dismiss will be granted. An appropriate order follows.

Dated: March 19, 2021                              BY THE COURT:

                                                   s/ Patricia L Dodge
                                                   PATRICIA L. DODGE
                                                   United States Magistrate Judge