IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DIANE BLANTON,                          )
                                        )
                    Plaintiff,          )
                                        )
        vs                              )        Civil Action No. 20-1534
                                        )
STATE FARM FIRE AND CASUALTY CO.,       )
                                        )
                    Defendant.          )

## MEMORANDUM OPINION

Plaintiff Diane Blanton ("Blanton") has brought an action for breach of contract against Defendant State Farm Fire and Casualty Co. ("State Farm") arising from State Farm's denial of coverage for an insurance claim.

By brief background, State Farm's motion to dismiss (ECF No. 6) the original Complaint was granted without prejudice (ECF Nos. 16, 17). Blanton then filed an Amended Complaint (ECF No. 18), which State Farm again moved to dismiss (ECF No. 19). State Farm's motion was again granted without prejudice and Plaintiff was given a final opportunity to amend (ECF Nos. 25, 26). Plaintiff later filed a Second Amended Complaint ("SAC") (ECF No. 27) and State Farm again moved to dismiss (ECF No. 29). State Farm's motion has been fully briefed (ECF Nos. 30, 33). For the reasons below, State Farm's motion will be granted.[1]

### I.   Facts Pleaded in Second Amended Complaint

State Farm issued a policy of insurance to Blanton that provides certain coverage for property she owns at 609 Dorseyville Road, Pittsburgh, Pennsylvania ("Policy"). The Policy

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

includes these terms:

> We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or otherwise excluded or limited in this policy.
>
> …
>
> SECTION I – LOSSES NOT INSURED
>
> 1. We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damages, arises from natural or external forces, or occurs as a result of any combination of these:
>
> …
>
> g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;
>
> …
>
> k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;
>
> …
>
> However, we will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section. [the "Resulting Loss Provision."]

(SAC Ex. A at 12, 14-16.)

Blanton alleges that on or about August 27, 2019, while the Policy was in full force and effect, she "suffered sudden and accidental direct physical loss to the property . . . as a result of a peril insured against under the Policy issued by State Farm, to wit, water damage." According to the Second Amended Complaint, the copper downspout on the property split, causing the release of water behind the soffit, fascia, and stucco. The "water that ensued from the split downspout caused water staining, delamination, and swelling of the OSB sheathing which resulted in cracking and detachment of the exterior stucco finish of Plaintiff's property." (SAC ¶¶ 5-10 & Ex. A.)

2

Blanton provided State Farm with timely notice of the loss. (SAC ¶ 9.) State Farm "admitted that there was damage from a frozen downspout, applied coverage and prepared an estimate." (*Id.* ¶ 11.) Blanton disputes that State Farm accurately paid for the areas to which it applied coverage. (*Id.* ¶ 12.) State Farm denied coverage for damages to the interior of Blanton's property because they were due to "continuous exposure of water from the downspout." (*Id.* ¶ 13.) It also concluded that there was degradation of structural areas resulting in deterioration, rot and mold inside the soffit under the box gutter. (*Id.* ¶ 16.)

While noting that the Policy does not define "degradation," "deterioration," "rot" or "mold," Blanton nonetheless alleges that the damages to her property cannot be characterized as degradation, deterioration, rot or mold. Even if they are so characterized, she asserts, these damages are covered under the Policy because they were caused by a sudden and accidental release of water from the cracking of the downspout. (*Id.* ¶¶ 17-19.)

Blanton attaches two exhibits to the Second Amended Complaint. Exhibit B includes an email from Blanton's private adjuster to State Farm that explains the "resulting damage from the broken downspout." He states, in part:

> The overhang was made up of a ½" sheet of OSB attached to the bottom of the rafters, with a .55" thick of Dow Styrofoam attached to the underside of the OSB, then the multi layer STO Wall System. This gave the exterior of the home a hard waterproof coat on the overhang and the walls. Unfortunately the waterproof coating also prevented the water from exiting the overhang and walls if it got in. So when the downspout [split] the melting snow and ice … started filling up the cavities in the overhang. The foam and STO wall systems prevented the water from escaping. The water would have caused the OSB in the overhan[g] to delaminate and swell as evident through the images. The water eventually found its way behind the wall system and started a path down the wall. As the water came down it would … eventually try to find its way out or pool in a spot [where] it could not escape. The water cause[d] the OSB to delaminate and swell therefore causing a failure of the STO system.

(SAC Ex. B.) The "STO wall system" is described by Blanton's adjuster as "not an ordinary

stucco wall." Exhibit B also includes photographs that evidently depict the damages to Blanton's property.

Blanton's one-count complaint claims that State Farm breached the terms of the Policy by failing to fully compensate her for the amount that she spent to repair the damages to her property.

## II.   Discussion

In the March 19, 2021 Opinion that granted State Farm's first motion to dismiss, the Court stated in relevant part that:

> Thus, as pleaded, Ms. Blanton's breach of contract claim fails to state a claim upon which relief may be granted. To be clear, the Court concludes that "deterioration, rot, wear, tear, and cracking" are Losses Not Insured as defined in the Policy, and that Ms. Blanton's interpretation of the Policy is unavailing. Simply put, there is no coverage for these types of damages.
>
> . . . Ms. Blanton states in her Brief in Opposition that she "has never conceded that the damage to the property should be classified as 'deterioration, rot, wear, tear, cracking or which is the result of mold." (ECF No. 12 at 5.) Notably, the Complaint does not define the "resulting damages" other than to vaguely describe it as water damage. Therefore, the Court cannot conclude as a matter of law that amendment would be futile in the event that Ms. Blanton claims that her property sustained "resulting damages" that are not excluded by the terms of the Policy. Therefore, with respect to Count I, the motion to dismiss will be granted with leave to amend in the event that Ms. Blanton can specifically define any "resulting damages" that are not excluded by the terms of the Policy.

(ECF No. 16 at 8.)[2]

In later dismissing the First Amended Complaint, the Court noted the following:

> Blanton's Amended Complaint does not cure the deficiencies of the original Complaint. After vaguely defining the loss as "water damage resulting in damages," Blanton merely pleads what the damages do *not* consist of, i.e., continuous exposure of water, degradation, deterioration, rot or mold. . . Further, although she alleges that she sustained a sudden and accidental loss to her property on August 27, 2019, her failure to plead the nature of this event other

---

[2] A bad faith claim in Count II of the complaint was also dismissed. Neither subsequent amendment includes a bad faith claim.

than to say it was "water damage" does not provide an adequate explanation of the basis for her breach of contract claim. While the release of water is alleged to have been sudden, the Amended Complaint also alleges that the damages resulted from a cracked and "frozen" downspout. Without any further explanation, this suggests that August 27, 2019 was the date that Blanton discovered the damage, not the date on which the initial "water damage" actually occurred. Moreover, Blanton does not define the nature of the damages that occurred after the operative event on August 27. Without such specificity, there is simply no way to determine if Blanton can state a claim that her loss is covered under the Policy.

(ECF No. 25 at 3).

"A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). Here, the parties do not dispute that the Policy must be interpreted under Pennsylvania law. Under Pennsylvania law, the insured has the burden of proving facts that bring its claim within the policy's coverage. *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1447 (3d Cir. 1996). "By contrast, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." *Id.* (citations omitted).

As noted by the Pennsylvania Supreme Court in *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*:

The goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy. When the language of an insurance policy is plain and unambiguous, a court is bound by that language. Alternatively, if an insurance policy contains an ambiguous term, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. Finally, the language of the policy must be construed in its plain and ordinary sense, and the policy must be read in its entirety.

106 A.3d 1, 14 (Pa. 2014) (citations omitted). A policy is not ambiguous simply because the parties disagree about its meaning. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3 154, 64 (3d Cir. 2011).

The Court may consider the exhibits included in the Second Amended Complaint in

resolving the motion to dismiss. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Moreover, if a plaintiff's "own exhibits contradict her allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (citations omitted).

Blanton alleges that her loss was "sudden" and occurred on August 27, 2019. She contends that State Farm admitted that her property sustained water damage as a result of a frozen downspout. In Exhibit B to the Second Amended Complaint, she submits an email from her adjuster that provides an explanation of "the resulting damage from the broken downspout." The adjuster states that when the downspout split, "melting snow and ice" caused delamination and swelling. Even accepting all of her allegations as true for purposes of the pending motion to dismiss, she fails to allege any facts that could plausibly support a conclusion that on August 27, 2019, in Pittsburgh, Pennsylvania, her downspout froze or melting snow and ice suddenly caused water damage. Indeed, the only logical conclusion from reviewing the entire complaint, including its exhibits, is that she discovered "water staining, delamination, and swelling of the OSB sheathing" on or about August 27.[3]

Plaintiff unpersuasively argues that because State Farm concluded that there was coverage for the loss of the split downspout, it cannot deny coverage for the resulting water damage. However, while State Farm determined that damage to the downspout itself, which Blanton alleges froze and split, is a covered accidental loss, this did not preclude it from concluding that

---

[3] At any rate, Blanton places an undue and seemingly irrelevant emphasis on the "sudden" nature of her damages. The Policy does not base or exclude coverage on whether the loss was "sudden." Rather, as stated in the relevant "Losses Not Insured" section of the Policy, State Farm will not pay for losses not insured "regardless of whether the loss occurs abruptly or gradually."

the Policy does not provide coverage for the resulting damage claimed by Blanton.

Moreover, Blanton's Second Amended Complaint does not cure the deficiencies of her prior complaints. While she has now defined the damage to the property as "water staining, delamination, and swelling of the OSB sheathing which resulted in cracking and detachment of the exterior stucco finish of Plaintiff's property," a plain reading of the Policy compels the conclusion that these damages are defined as "losses not insured" and thus are excluded from coverage.

Among the "losses not insured" are wear, tear, decay, marring, and deterioration (Section I-Losses Not Insured, 1.g.), as well as cracking, bulging, shrinking or expansion of walls, roofs, or ceilings (Section I-Losses Not Insured, 1.k). The Court finds that these terms are plain and unambiguous and thus must construe them in their plain and ordinary meaning. Delamination, which is defined as "separation into constituent layers," http://www.merriam-webster.com/dictionary/delamination, and water staining fall within the common meaning of decay, deterioration, and/or marring. All of these common terms relate to the impairment of appearance or quality. Likewise, as specifically described in Exhibit B, a swelling of sheathing attached to the rafters of the structure represents a bulging or expansion of the walls and/or roofs, and therefore also represents a loss not insured.

The Policy states that State Farm "will pay for any resulting loss from items a. through l. *unless the resulting loss is itself a Loss Not Insured as described in this Section.*" (Ex. A at 16) (emphasis supplied.) The resulting loss claimed by Blanton is cracking and detachment of the exterior stucco finish of her property. As noted in the Court's previous opinion (ECF No. 16 at 7), cracking of walls is a loss not insured under the Policy. Moreover, detachment of the stucco walls also falls within item k as it relates to a shrinking, bulging or expansion of the walls of the

7

property. It also represents deterioration of the walls (1.g.). Thus, as these resulting losses are also

losses not insured, they are also excluded from coverage pursuit to the terms of the Policy.

**III.    Conclusion**

      For these reasons, Blanton has failed to state a claim on which relief may be granted. The

Court finds that any further amendment would be futile because her claim is excluded from the

insurance coverage provided to her by State Farm, and thus the Second Amended Complaint will

be dismissed with prejudice. An appropriate order follows.


Dated: November 19, 2021               BY THE COURT:

                                  /s/Patricia L. Dodge_____
                                  PATRICIA L. DODGE
                                  United States Magistrate Judge